UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flmb.uscourts.gov

In re:

CHRISTI LEE STRAUB,     Case No.: 21-13230-EPK
                        Chapter 7
     Debtor.
_____/

CHRISTI LEE STRAUB,

     Plaintiff,
vs.                     Adv. No.:

MISSOURI HIGHER EDUCATION
LOAN AUTHORITY and THE UNITED
STATES DEPARTMENT OF
EDUCATION and THE UNIVERSITY
OF MINNESOTA

     Defendants,
_____/

**ADVERSARY COMPLAINT TO DETERMINE
THE DISCHARGEABILITY OF PLAINTIFF'S STUDENT LOANS**

The Plaintiff/Debtor, CHRISTI LEE STRAUB ("Ms. Straub"), by and through her undersigned counsel, files this Adversary Complaint to Determine the Dischargeability of Plaintiff's Student Loans owned by the Defendant THE UNITED STATES DEPARTMENT OF EDUCATION ("Department of Education"), and serviced by the Defendant MISSOURI HIGHER EDUCATION LOAN AUTHORITY ("Missouri Higher Education"), and also owned by the Defendant, THE UNIVERSITY OF MINNESOTA (all collectively "Defendants"), and states:

1

## JURISDICTION

1. This action is brought pursuant to sections 105(a) and 523(a)(8) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 7001(6). 11 U.S.C. §§ 105(a), 523(a)(8) (2005); Fed. R. Bankr. P. 7001(6).

2. This Court has subject matter jurisdiction over the matter pursuant to section 1334 of Title 28 the United States Code. 28 U.S.C. § 1334.

3. This matter is a core proceeding under section 157(b)(2)(A), (b)(2)(I), and (b)(2)(O), of Title 28 of the United States Code. Jurisdiction is proper because the Defendants are three of Ms. Straub's creditors and were listed on her Schedules.

4. All parties have been properly joined pursuant to Federal Rule of Bankruptcy Procedure 7020 because the question of whether Ms. Straub's student loans are dischargeable is common to all the defendants in this action.

## PARTIES

5. Plaintiff currently resides at 6106 Birch Drive, Fort Pierce, FL 34982.

6. The Department of Education is an agency of the United States government.

7. The Department of Education is the owner of the federal student loan at issue.

8. Missouri Higher Education is the servicer of the federal student loan at issue in this matter. Missouri Higher Education is a non-profit company, with headquarters in Chesterfield, Missouri. Missouri Higher Education's primary business is loan management, loan servicing, and asset recovery.

9. The University of Minnesota is a public university with a campus in Minneapolis, Minnesota.

10. The University of Minnesota is the owner and servicer of the private student loan at issue in this matter.

**PROCEDURAL POSTURE**

11. On April 2, 2021, Ms. Straub filed an individual voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code.

12. Pursuant to Ms. Straub's Schedule E/F, Ms. Straub listed the Creditor Missouri Higher Education as a disputed unsecured creditor in the total amount of $346,417.00.

13. Pursuant to Ms. Straub's Schedule E/F, Ms. Straub listed the Creditor University of Minnesota as a disputed unsecured creditor in the total amount of $3,646.00.

14. Ms. Straub financed her education at the Thomas Jefferson School of Law through the federal student loan now owned by the Department of Education and serviced by Missouri Higher Education.

15. Ms. Straub financed her medical school education at University of Minnesota with the private loan now owned by University of Minnesota.

16. Ms. Straub seeks an Order confirming that these student loan debts are dischargeable because repaying these debts would impose an undue hardship upon Ms. Straub.

**BACKGROUND FACTS**

17. Ms. Straub attended the University of Minnesota's Medical School at the age of 40 in 1990.

18. Ms. Straub obtained a private loan through University of Minnesota's Alumni Association, which she used to finance her education at University of Minnesota's Medical School.

19. Ms. Straub also obtained federal student loans to cover living and other education related expenses.

20. Preceding her enrollment at University of Minnesota's Medical School, Ms. Straub divorced her abusive ex-spouse, sold her business, and her father passed away.

21. While enrolled at University of Minnesota's Medical School, Ms. Straub was diagnosed with hypothyroidism, her mother was diagnosed with cancer, and Ms. Straub was left to take care of her mother and her HIV-positive brother.

22. Ms. Straub requested to take a leave of absence from Medical School and was told she would be readmitted after she took two and a half months off and passed her boards exam.

23. Ms. Straub was given no resources to study for her exam.

24. Ms. Straub subsequently informed University of Minnesota that she would not be returning.

25. Upon receipt of Ms. Straub's decision not to return, University of Minnesota's financial aid office immediately defaulted her private loan.

26. The default made it impossible for Ms. Straub to continue her education in any medical program because of the University of Minnesota's policy of restricting the request of transcripts and denying admission of persons who were in default on their student loans.

27. After leaving the University of Minnesota's Medical School, Ms. Straub then took the Law School Admissions Test.

28. Ms. Straub was recruited by the Thomas Jefferson School of Law in San Diego because of her high MCAT scores and received a scholarship.

29. The Thomas Jefferson School of Law did not require her transcripts for admission.

30. While at the Thomas Jefferson School of Law, Ms. Straub worked in order to cover costs that her scholarship did not cover.

31. The Thomas Jefferson School of Law found out about Ms. Straub's employment and told her she needed to either quit her job or forego her scholarship.

32. Ms. Straub kept her job because she needed the income.

33. Because of that decision, Ms. Straub lost her scholarship and took out federal student loans.

34. In her final semester at the Thomas Jefferson School of Law, Ms. Straub requested a federal student loan to prepare for the bar exam.

35. The Thomas Jefferson School of Law's financial aid office advised her to wait until graduation to request the loan.

36. Upon Ms. Straub's graduation from Thomas Jefferson School of Law, she again requested a federal student loan to prepare for the bar exam and was told she was too late.

37. Ms. Straub was left with a Juris Doctor degree and no way of financing her preparation for the bar exam.

38. Upon Ms. Straub's graduation from the Thomas Jefferson School of Law, her federal loans totaled $148,868.71.

39. Ms. Straub was able to work secretarial jobs for temp agencies but was not offered any legal work because she had not taken the bar and was not a paralegal.

40. Ms. Straub was not offered medical or lab work, either.

41. In 2002, Ms. Straub's federal loans (used to attend medical school and law school) were consolidated.

42. Ms. Straub has not found employment since 2012 despite making several attempts to do so.

43. Ms. Straub has sent out numerous resumes and applications (even for federal jobs), to no avail. Seeking employment consumed more than 40 hours per week.

44. Ms. Straub has developed medical issues that inhibit her ability to find employment including arthritis in her knees which has rendered her in need of knee replacements and requires her to use assistive devices to stand and walk for any significant periods of time.

Current Income and Expenses

45. Ms. Straub is a 71-year-old single woman with no dependents.

46. Because of her age and medical conditions, Ms. Straub has been unsuccessful in her efforts to procure gainful employment that would leave her with enough disposable income to purchase more than the bare necessities.

47. Ms. Straub's monthly expenses total approximately $3,372.77 which includes food, housekeeping, utilities, transportation, cell phone service, life insurance, health insurance, car payments, and car insurance. (Bank. Case DE 1).

48. Ms. Straub and her partner lived in a mobile home for many years. Every year, they feared that they would lose their home to a hurricane. After two and a half years of searching, they found a modest home that would stand up against the elements.

49. Ms. Straub's private student loan was returned to The University of Minnesota from a private debt collection agency as of February 11, 2021.

50. As of February 11, 2021, Ms. Straub's payoff for her private student loan from The University of Minnesota totals $3,645.50.

51. As of February 25, 2021, Ms. Straub's payoff for her federal student loan used to attend the Thomas Jefferson School of Law is $346,417.62

52. Ms. Straub's is currently on an income contingent repayment plan on the federal student loan used to finance her education at the Thomas Jefferson School of Law and the monthly payment amount is $0.

53. Ms. Straub currently resides in a modest home, lives a modest lifestyle, and does not incur unnecessary expenses.

54. Ms. Straub's repayment of these debts would impose an undue hardship on Ms. Straub because her income is approximately $936.00 from social security, while her monthly expenses are approximately $3,372.77.

## COUNT I: DISCHARGEABILITY

55. Ms. Straub incorporates by reference the allegations in the above paragraphs.

56. A debtor may challenge the dischargeability of student loan(s) by proving that excepting the debtor's student loan(s) from discharge would impose an undue hardship on the debtor and dependents. 11 U.S.C. § 523(a)(8) (2005).

57. The prevailing standard for defining undue hardship emerged in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2nd Cir. 1987) and has been adopted by the Eleventh Circuit. *Gesualdi v. Educ. Credit Mgmt. Corp. (In re Gesualdi)*, 505 B.R. 330, 338 (Bankr. S.D. Fla. 2013).

58. The *Brunner* test considers the debtor's current ability to pay student loan indebtedness while maintaining a minimal standard of living, the debtor's future ability to make the loan payments, and the debtor's good faith in connection with the loan. *Brunner*, 831 F.2d at 396.

59. According to the Department of Justice's Means Testing Guidelines, it costs $1,923.00 per month to maintain a minimal standard of living in Florida.

60. Based on her current level of income, Ms. Straub is approximately $987.00 short of maintaining even the minimum standard of living.

61. Based on the above, if forced to repay the student loan at issue, Ms. Straub will not be able to maintain a minimal standard of living.

62. There is a certainty that Ms. Straub will not be able to repay her loans within her lifetime because she is 71 years old and is unable to secure employment, despite numerous attempts to do so, due to her age and medical issues.

63. Ms. Straub's income is currently solely derived from social security benefits and it is foreseeable that she will be receiving her continued monthly income without much variation.

64. If Ms. Straub's federal loans are forgiven rather than discharged, it would create undue tax burdens.

65. Finally, Ms. Straub has made a good faith effort to repay this student loan based on her various attempts to secure employment, maximize her income, and minimize expenses.

66. Altogether, Ms. Straub's student loan debt should be discharged because repayment of this loan would impose an undue hardship. Specifically, Ms. Straub's income is a fixed amount of approximately $936.00 from social security, while her monthly expenses are approximately $3,372.77.

67. Therefore, Ms. Straub respectfully requests that this Court discharge these student loan debts.

WHEREFORE, Ms. Straub, requests that this Honorable Court enter a judgment determining that: the debt owed to the Defendants is discharged, despite the fact that the debt was used for educational purposes; the debt will be discharged in its entirety by virtue of this bankruptcy proceeding; and for any further relief that this Honorable Court deems just and proper.

Respectfully submitted on this 18th day of May, 2021.

**VAN HORN LAW GROUP, P.A.**
330 N. Andrews Ave., Suite 450
Fort Lauderdale, Florida 33301
(954) 765-3166
(954) 756-7103 (facsimile)
Chad@cvhlawgroup.com
By: /s/ Chad T. Van Horn, Esq.
Chad T. Van Horn, Esq.
Fla Bar #64500